TEXAS & N. O. R. CO. v. PETERSILKA.†
(No. 5461.)

(Court of Civil Appeals of Texas. San Antonio.
April 7, 1915. Rehearing Denied
May 12, 1915.)

1. WITNESSES ☞395 — EXAMINATION — CORROBORATION.

Plaintiff's witness, who had been in the employ of defendant, and had signed a statement relating to the accident, prepared by one of defendant's claim agents, was attacked on the ground that he was unfriendly to defendant, and the statement which contradicted his testimony was put in evidence. After leaving defendant's employ, plaintiff's attorneys wrote him, and, without knowing who they represented, he made statements as to the accident which corresponded to his testimony at the trial. *Held*, that as his credibility was bitterly attacked and the conflicting statement prepared by the claim agent, which the witness repudiated, was introduced, the letters written by plaintiff's attorney and the witness' replies were admissible in corroboration.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1260; Dec. Dig. ☞395.]

2. APPEAL AND ERROR ☞231—RESERVATION OF GROUNDS OF REVIEW — INSTRUCTIONS — OBJECTIONS.

Objections that an instruction is an incorrect statement of the law, or is a charge on the weight of the evidence, are too general to be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1299, 1352; Dec. Dig. ☞231.]

3. APPEAL AND ERROR ☞742—ASSIGNMENTS—SUFFICIENCY.

Objections to instructions will not be considered where the assignment of error containing them is not followed by an appropriate proposition raising such objections.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

4. APPEAL AND ERROR ☞742—ASSIGNMENTS—PROPOSITION—SUFFICIENCY.

A proposition accompanying an assignment of error, though correct as an abstract principle, will not be considered, where it has no basis in the exceptions.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. ☞742.]

Appeal from District Court, Harris County; John A. Read, Judge.

Action by Mrs. Anton Petersilka against the Texas & New Orleans Railroad Company.

─────────────────────

From a judgment for plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, Lane, Wolters & Storey, Wm. A. Vinson, and Paul Kayser, all of Houston, for appellant. Barkley & Green, Cole & Cole, and A. B. Wilson, all of Houston, for appellee.

FLY, C. J. Appellee, the widow of Anton Petersilka, deceased, sued appellant for the recovery of damages, alleged to have accrued through the death of her husband. The negligence alleged was the failure to use ordinary care to furnish a safe place in which Petersilka, an employé of appellant, could perform the work that devolved upon him, in that deceased was placed in a position of peril by the operation of a certain large swinging crane, with a heavy engine frame suspending therefrom, and that, in endeavoring to save himself from his position of danger, deceased had no avenue of escape, except to go between a planer he was operating and a deck plate negligently placed by appellant opposite the end of the planer, which resulted in deceased being crushed to death between the planer and the deck plate. Appellant pleaded contributory negligence and assumed risk. A trial by jury resulted in a verdict and judgment for appellee in the sum of $12,000.

[1] The first and second assignments of error assail the action of the court in admitting in evidence two letters of certain attorneys of plaintiff to a witness, Ben H. Sherman, of Cleveland, Ohio, and a letter written to said attorneys by Sherman, as well as a statement by him as to the facts attending the death of Petersilka, made in answer to questions propounded to him by the attorneys aforesaid. The letters were written and the answers to the questions given by Sherman in July, 1913, at a time when he was in Cleveland, Ohio. The letters and statement were objected to as "hearsay, self-serving, immaterial, irrelevant, and not admissible for any purpose." The bill of exceptions was approved with the qualification that the evidence was solely for the purpose of corroborating the witness Sherman, whose testimony had been attacked through a written statement made by him, to the claim agent of appellant, and to meet attacks made upon the witness by appellant tending to impeach him. The jury was instructed not to consider the correspondence and statement to prove any fact in the case, but merely in so far as it might affect the credibility of the witness. The facts show that Sherman had made a written statement to the claim agent, with the contents of which he was ignorant, which statement in some important particulars was in direct conflict with his testimony at the trial; that the witness was asked if he had not fallen out with the company and was unfriendly to it, and, if he "was not particular to find out, that he was to testify for plaintiff before he would agree to come."

In other words, the correspondence and statement made by the witness were admitted in evidence in reply to a vigorous attack by appellant upon the credibility of the witness.

At the time the letters of the attorneys and the answers to their questions as to the circumstances surrounding the killing of Petersilka were sent, Ben H. Sherman did not know whether the attorneys were representing appellee or the railroad company. He made no inquiries as to whom they were representing until after he sent the statement and committed himself to the facts stated therein. He made the same statements at the trial as he made at that time, and no influence could have operated on his mind at the time he wrote the letters to cause him to make the statements he made. Whatever interest he may have had in the result of the trial after he had written to the attorneys, it could not have caused him to fabricate his testimony at the trial. Not only did appellant attack the witness for unfriendliness, but also endeavored to create the impression with the jury that he had changed his testimony because he was paid by appellee to attend the trial and testify. The claim agent took down a statement of the witness a day or two after the accident, which witness signed but did not read, and he denied that he told the claim agent the matters contained in the statement. This was denied by the claim agent, and a direct conflict arose between the witnesses, and Sherman occupied the position of an impeached witness, if any credence was given to the testimony of the claim agent. This was the position of affairs when appellee sought to reinforce the credibility of her witness by the correspondence, which took place when the witness was utterly ignorant as to whether his testimony was sought by appellant or appellee. He had no unfriendly feeling whatever towards appellant, and could have no motive for fabricating the testimony. Under all the circumstances, we are of opinion that the evidence was properly admitted.

The evident design of appellant was to show the jury that Sherman, actuated by base and unworthy motives, had testified differently at the trial from his written statement made to its claim agent, and appellee had the undoubted right, not only to show that the written statement to the claim agent was not the one dictated by the witness, but that afterwards he had voluntarily written a statement, when there was no motive or influence to indulge in fabrication, which corresponded in all respects with his testimony at the trial. The well-established rule is:

"That whenever a witness is sought to be impeached by showing that he has made declarations inconsistent with the testimony given by him upon the trial, and the tendency of such impeaching evidence is to show that the testimony of the witness is, by reason of some motive existing at the time of the trial or of some influence then operating upon him, fabricated, it is proper to admit evidence of his former declarations which corroborate his testimony, pro-

vided such declarations were made at a time when no such motive or influence existed." Insurance Co. v. Eastman, 95 Tex. 34, 64 S. W. 863; Davis v. Davis, 44 Tex. Civ. App. 238, 98 S. W. 198; Railway v. Irvine, 89 S. W. 428; Legere v. State, 111 Tenn. 368, 77 S. W. 1059, 102 Am. St. Rep. 781.

It is admitted by appellant that the statement made to the claim agent, as well as the fact that the witness was paid his regular wages by appellee while in attendance on the court, were introduced to impeach the witness; and when it was shown that the statement was made to a claim agent of appellant, when the witness was an employé of appellant and would feel the pressure that would arise from a desire to hold his job, and that he did not read the statement, it was certainly reasonable and proper to introduce a statement made when no pressure of any kind could be applied, and when no motive could have existed for fabricating evidence. Not knowing who wanted the evidence, he could not have arranged the statement to have suited the desires of appellee. As said in the Tennessee case last cited:

"And so, it may be said, it is now established in this country that where it is charged that testimony of the witness is a recent fabrication, and is the result of some relation to the party or cause, or of some motive of personal interest, it may be supported by showing he had made a similar statement before that relation or motive existed. However little support such testimony may give to the impeached witness, yet it has been held to be competent upon the ground that the consistent statement had been made at a time that there was little, if any, temptation to speak an untruth with regard to the matter afterwards brought into controversy."

It was undoubtedly, as stated in appellant's brief, appellee's desire "to bolster up and strengthen his testimony against this attack on his credibility" that induced the introduction of the correspondence and statement. The admissions of appellant bring the evidence directly within the rule herein announced, when it is borne in mind that there is not one single word of testimony to show that the correspondence and statement took place, as claimed by appellant, "under precisely the same conditions as his testimony at the trial." The witness did not know for whom the statement was sought when he made it. There is no foundation whatever in the evidence for the repeated assertion in the brief that Sherman had any enmity to appellant or that he had been discharged. The evidence showed that a position was offered Sherman by appellant about the time of the trial. The whole argument is based on the false premise that Sherman was actuated by "malice or ill will or other sinister influence to change his testimony." On the other hand, the evidence shows that his voluntary statement, made when he was many hundreds of miles from Texas, was identical with testimony at the trial.

[2] The third assignment of error assails the charge of the court on the question of the action of the employé in case of an emergency created by the negligence of the employer, not being classed as contributory negligence, although, in the absence of the emergency, such conduct would be contributory negligence. The grounds of objection in the bill of exception are:

"Because the same is an incorrect statement of the law; because it is not the law; because it is a charge upon the weight of the evidence, and the evidence is insufficient to raise an issue to the effect that the deceased was required to act by reason of an emergency for his own safety; and because the evidence does not raise the issue that the deceased was acting wildly and was in a perilous position."

The two first objections are too general and indefinite to amount to anything, and the other objections are addressed to the sufficiency of the evidence.

[3] All of the objections are abandoned, however, because the assignment of error is not followed by a proposition raising either of them. The only proposition appellant seeks to raise is a proposition of law that the charge makes the conduct of deceased the standard by which appellant's liability is to be judged, whereas the conduct of a man of ordinary prudence is the standard.

[4] That proposition has no foundation upon which to rest either in the bill of exceptions or the assignment of error, and it will not be considered. The points raised in the bill of exception and the assignment are completely ignored, and it is sought to lead this court into the consideration of matters that were withheld from the district court. It cannot be done, however sound the abstract proposition of law stated by appellant.

The fourth assignment of error is like unto the third, and is followed by the same proposition that is found under the third, and, for the same reasons given, the proposition will not be considered. Judgments cannot be reversed on abstractions, but the action of the lower court must be assailed on grounds raised in that court in the legal way.

The fifth assignment of error is overruled. The evidence was sufficient to show that Anton Petersilka came to his death in the manner alleged in the petition, through the negligence of appellant in swinging an engine frame on a crane so as to place deceased in a position of real danger, and in his efforts to escape that danger, through the only way open to him, between the planer and a deck plate negligently left close to the planer, he was caught and so crushed that he died from his injuries. The place furnished by appellant to appellee in which to perform his labor was unsafe.

The judgment is affirmed.