## EL PASO ELECTRIC CO. v. CANNON.
### No. 2963.

Court of Civil Appeals of Texas. El Paso.
March 8, 1934.

Rehearing Denied March 29, 1934.

Baker, Botts, Andrews & Wharton, of Houston, and Brown & Brooke, of El Paso, for appellant.

John T. Hill and H. A. Van Tassel, both of El Paso, for appellee.

HIGGINS, Justice.

The appellee, Cannon, while a passenger upon a street car operated by appellant, was cut and stabbed by a fellow passenger. Cannon brought this suit against appellant to recover damages resulting from his injuries.

Appellee, accompanied by Mr. and Mrs. Peables, boarded the car in Juarez, Mexico. The car was well filled with passengers returning to El Paso. It crossed the international bridge and proceeded a few blocks when a fight occurred between Cannon and a stranger upon the car. Cannon struck the stranger and knocked him unconscious. According to the testimony of Cannon and other witnesses, the stranger was the aggressor in this fight. Other testimony was to the effect that Cannon provoked the difficulty. The stranger was soon restored to consciousness and resumed his seat in the car near the front. Cannon also resumed his seat. The car then proceeded to the intersection of San Antonio and Oregon streets in El Paso and

stopped to discharge passengers. As the car slowed down a number of passengers,' including Cannon, Mr. and Mrs. Peables, and the stranger, arose and proceeded towards the front exit. The stranger and Cannon reached the front end of the car near the motorman, the stranger being in front. There a second fight took place between them in which Cannon was cut and stabbed.

The case was submitted upon the general issue resulting in verdict and judgment in Cannon's favor for $3,333.

Briefly stated, the court's charge upon the issues was to this effect:

To find for plaintiff if the assault was uninvited by him and defendant's employees in charge of the car were negligent in failing to protect plaintiff and such negligence proximately caused his injuries.

To find for defendant unless it was found:

1. The acts of the person who cut plaintiff were uninvited.

2. That defendant's employees could have reasonably foreseen and anticipated injury to plaintiff by the person who cut him, and by the exercise of ordinary care could have prevented it. And

3. To find for defendant if plaintiff was the aggressor in the conflict in which he was cut.

Special charges requested by defendant were given to this effect:

No. 1. To find for defendant if "the plaintiff by reason of conduct, if any, upon his part such as was reasonably calculated so to do, provoked a difficulty with another passenger, proximately resulting in the injuries complained of by him."

No. 3. To find for defendant if "the plaintiff, by his acts and conduct, if any, or by his language, if any, provoked or brought about a fight with another party and that in said fight, if any, the plaintiff was cut or injured as alleged by him."

No. 4. To find for defendant if "the plaintiff, Jack Cannon, in the presence and hearing of the party with whom he had the difficulty, cursed or abused such party, or used any violently abusive language to or concerning such person, under circumstances reasonably calculated to provoke a breach of the peace, and that such words, or acts, or conduct, if any, upon the part of the plaintiff, provoked and brought about the difficulty in which he received the injuries complained of."

■ By its special charge No. 2, defendant requested an instruction to find in its favor if "the plaintiff and another party engaged in a fight or mutual combat together upon the street car and that in said fight or mutual combat, the plaintiff received the injuries complained of by him."

Appellant complains of the refusal of this last-mentioned charge in that connection, asserting that if the charge was not correctly drawn it was nevertheless sufficient to indicate the defensive issue of mutual combat and impose upon the court the duty of preparing and submitting a correct charge upon the same.

In the main charge plaintiff's right to recover was conditioned upon a finding that the assault was uninvited by him. Later therein the jury was instructed to find for defendant if plaintiff was the aggressor in the conflict. Then in the special charges the defensive issues of plaintiff provoking the difficulty were fully submitted.

"The issue of mutual combat as a limitation upon the right of self-defense does not arise alone from the fact that the parties to the affray are mutually engaged in it. The issue arises out of an antecedent agreement to fight. The agreement must exist. Of' course, it may be proved by direct testimony or inferred from circumstances." Carson v. State, 89 Tex. Cr. App. 342, 230 S. W. 997, 998.

The evidence is lacking in anything to indicate any prearrangement or agreement to engage in combat. The evidence does raise the issue of plaintiff being the aggressor and provoking the difficulty. Such being the state of the evidence, "then in the nature of things the issue of mutual combat is not in the case." "Because two parties mutually fight, or do fight, and in that sense there is a mutuality of combat, does not suggest the issue of mutual combat which takes away the right of self-defense." Reese v. State, 49 Tex. Cr. App. 242, 91 S. W. 583, 584.

We regard the evidence as insufficient to raise the issue of mutual combat as defensive matter, for which reason a charge upon such issue was not necessary.

■ Mrs. Peables, witness for plaintiff, upon her redirect examination, was permitted to testify that she and Mr. Peables and plaintiff met in the office of Mr. Hill, counsel for plaintiffs, and talked about the case before the suit was filed, and she at that time told them there was a man got on the front end of the car at the bridge and stood in behind the motorman. This testimony was admitted over objection that it was irrelevant, etc.,

and plaintiff could not bolster up the testimony of his witness in such manner.

Mrs. Peables was a witness for plaintiff in rebuttal. Defendant had previously placed upon the stand a Mr. Woolsey, a United States officer in the Public Health Service. Woolsey, in behalf of defendant, had testified he boarded the car at the immigration office and stood in the front end near the motorman; when the second fight began, he did not know who started it because he had his back turned. When he discovered the fight, he felt it was his duty to stop it and grabbed Cannon; somebody pushed the other man, and by that time the door was open and the other man stepped off the car and walked away.

Upon her direct examination Mrs. Peables testified a man got on the front of the car at the bridge and stood behind the motorman; that this man did not grab Cannon. She further testified the motorman held Cannon during the fight in which the cutting occurred. It is plain Mrs. Peables was referring to Woolsey as the man who got on the car at the bridge and stood by the motorman and whom she testified did not hold Cannon during the fight.

Mrs. Peables was cross-examined, in part, as follows:

"Q. You didn't testify in this case about this Public Health Officer, as having gotten on at the bridge, until after the Public Health Officer testified? A. I don't understand your question.

"Q. Isn't it true, you didn't know anything about the Public Health Officer until after he had testified in this case? A. I didn't even know he testified and I didn't know he was a Public Health Officer.

"Q. Isn't it true, you didn't know anything about the Public Health Officer having been on that car until after he testified? A. I certainly did know he had been on and I didn't know he was a Public Health Officer.

"Q. Haven't you and Mr. Peables and Mr. Cannon been trying to find out about that prior to the case? A. I had not, no, sir."

Then upon her redirect examination Mrs. Peables gave the testimony which it is asserted was improperly admitted.

The matter presents no error, for her cross-examination as quoted was an effort by defendant to leave the impression that her testimony upon direct examination concerning a man getting on the car in front at the bridge, and who stood behind the motorman, was a fabrication and afterthought. Under such circumstances it was permissible to show that before the suit was filed she made the same statement to the plaintiff's counsel. Lewy v. Fischl, 65 Tex. 311; Gulf, C. & S. F. Ry. v. Garren, 96 Tex. 605, 74 S. W. 897, 97 Am. St. Rep. 939; Ætna Ins. Co. v. Eastman, 95 Tex. 34, 64 S. W. 863; G., C. & S. F. R. v. Matthews, 100 Tex. 63, 93 S. W. 1068; H. & T. C. Ry. v. Fox, 106 Tex. 319, 166 S. W. 693; Davis v. Davis, 44 Tex. Civ. App. 238, 98 S. W. 198; Texas & N. O. R. Co. v. Petersilka (Tex. Civ. App.) 176 S. W. 70.

But if it be conceded the evidence should have been excluded, the error in admitting the same was harmless, because it confirmed the testimony of defendant's witness Woolsey, that he boarded the car at the Immigration Office and assumed a position by the motorman at the front end of the car.

■ Another ruling upon evidence complained of by appellant relates to testimony given by plaintiff testifying in his own behalf. It is shown by this excerpt from the record:

"Q. Now, just tell the jury—you allege you are permanently disabled, tell the jury why you say that, why you claim you are permanently disabled because of these wounds.

"Mr. Brown: I think that is a matter of medical and expert testimony. We object to it on that ground.

"The Court: Overrule the objection.

"Mr. Brown: Note an exception.

"Q. Go ahead and answer the question, why do you think you are permanently disabled? A. Well, when I reach and pick up anything or do any straining of any kind, it hurts.

"Q. Very much? A. Quite a bit, and probably sometime in the night I wake up and my whole side will be hurting.

"Mr. Brown: Our objection goes to all of that on the ground that it is incompetent and immaterial and a matter of expert testimony.

"The Court: Overrule the objection.

"Mr. Brown: Note an exception.

"Q. What other experience have you had you didn't have before? A. I can't eat like I could before; when I eat anything, I bloat up and have to take medicine all the time for a purgative.

"Mr. Brown: We particularly object and move that that be stricken out.

"The Court: Overrule the objection.

"Mr. Brown: We except."

Plaintiff further testified he was not that way before.

One of plaintiff's injuries consisted of a stab which penetrated his liver two to two and one-half inches. It was necessary to operate upon him and sew up the cut in the liver. The original abdominal wound was in a transverse direction. This was enlarged a short distance and then a longitudinal incision was made to expose the abdominal organs. Some infection later developed in the incision and it was necessary to "freshen" its edges and sew it up again.

The testimony was simply a statement by plaintiff of his physical symptoms and conditions after he had sustained his injuries. Such symptoms and conditions were facts which he could properly state as such. The objection made to the testimony is not tenable. 19 Tex. Jur. p. 358, § 232; Standard, etc., v. Williams (Tex. Civ. App.) 4 S.W.(2d) 1023; Id. (Tex. Com. App.) 14 S.W.(2d) 1015; Texas & P. Ry. Co. v. Watts, 36 Tex. Civ. App. 29, 81 S. W. 326; Texas, etc., v. Davies (Tex. Civ. App.) 6 S.W.(2d) 792, 795.

■ The charge upon the measure of damages reads: "In estimating such damages, if any, if you find that the plaintiff has suffered mental and physical pain as a result of his injuries, you may take that into consideration and allow such sum as you find, which, if paid in cash now, will reasonably compensate him for such mental and physical pain as you find he 'has suffered directly resulting from the occurrence complained of; if you find that the plaintiff will suffer mental and physical pain in the future, proximately resulting from the occurrence complained of, you may take that into consideration and allow such sum as you find will reasonably compensate him for such mental and physical pain as you find that he will suffer in the future proximately resulting from the cutting complained of. If you find that the plaintiff has been prevented from laboring and earning money on account of the cutting complained of, you may take that into consideration and allow such sum as you find will reasonably compensate him for the time heretofore lost, if any, proximately resulting from the cutting complained of; and if you find that he will be prevented from laboring and earning money in the future, as a result of the cutting complained of, you may also take that into consideration and allow such sum as you find will reasonably compensate him for such diminished capacity to labor and earn money in the future, if any, proximately resulting from the cutting complained of."

To this charge it is objected:

1. It permits a double recovery.

2. Is misleading and confusing.

3. There is no evidence to warrant submission of impairment to labor and earn money in the future.

The charge is not subject to the two objections first stated. This is apparent.

■ As to the third criticism, it is true the only medical expert who testified said plaintiff had entirely recovered, was in as good physical condition as he was before his injury, and his future earning capacity unimpaired; but it is a matter of common knowledge the medical experts are not always right in their opinions and prognoses.

In our opinion the testimony of plaintiff is sufficient to raise an issue as to impaired capacity to labor and earn money in the future.

The sufficiency of the evidence to support the verdict and judgment is attacked upon the ground that plaintiff's injuries and damages were too remote. As we understand this theory, it is that defendant's employees could not reasonably have anticipated and foreseen the assault made upon plaintiff and the injuries which he suffered at the hands of his fellow passenger.

■ It was the duty of defendant's employees operating the car to protect plaintiff from the assault provided they knew of it or 'had reasonable grounds to anticipate it. Houston & T. C. Ry. Co. v. Phillio, 96 Tex. 18, 69 S. W. 994, 59 L. R. A. 392, 97 Am. St. Rep. 868.

■ There is an abundance of testimony the first fight was precipitated by the fellow passenger, making a wholly unprovoked assault upon plaintiff. This being true, such employees might reasonably have anticipated a repetition of such misconduct, and they should have used ordinary care to protect plaintiff against it.

Furthermore, when the second fight occurred the motorman knew of it and did nothing to protect plaintiff. On the contrary, according to the testimony of plaintiff and his witnesses, the motorman held plaintiff while the stranger was cutting and stabbing him. In this state of the evidence the point made by defendant cannot be sustained.

■ The assignment asserting the verdict is excessive, is overruled. In addition to the abdominal wound above mentioned, it was shown that plaintiff was cut in the face, the gash extending from the mouth towards the ear; there was a gash in the throat under the chin. As a result of the abdominal

wound, and in the liver, much blood was lost. A blood transfusion was necessary. Plaintiff was confined in a hospital for 52 days. Operations were necessitated by the abdominal wound as heretofore stated. In view of the injuries sustained we do not regard the verdict of $3,333 as excessive.

█ Under other assignments it is complained:

1. The verdict was a quotient one.

2. That the juror Grambley, who had lost a leg years before, related his experience of trouble with his leg after its loss.

3. That the juror Grambley was biased and prejudiced.

Three jurors testified. It appears there was a wide difference of opinion among the jurors as to the amount of damages which should be awarded. In an effort to reach an agreement the jurors at least twice, and perhaps three times, wrote the amounts they severally thought should be awarded and totaled same. The total was divided by twelve. The last time such a calculation was made, the result was $3,333, and this was returned as the verdict. The evidence, considered as a whole, warranted the trial court in finding there was no agreement in advance to accept the quotient as the amount to be awarded; that the calculation was used as a basis for compromise; and the quotient, after it. was ascertained, was then agreed to as the verdict. Upon this state of facts the trial court did not abuse the discretion vested in it holding this alleged ground of misconduct was not shown. Andrews v. York (Tex. Civ. App.) 192 S. W. 338; El Paso E. Ry. Co. v. Collins (Tex. Civ. App.) 10 S.W.(2d) 397, and cases there cited. This last mentioned was later' reversed by the Commission of Appeals on other grounds. See 23 S.W.(2d) 295, and 25 S.W.(2d) 807.

As to alleged improper statements by the juror Grambley, we quote from appellant's brief:

The juror Bush testified:

"Mr. Grambley, one of the jurors, claimed that sometimes a dead limb will bother you afterwards, in speaking of his lost leg. He said he believed that would affect Mr. Cannon and he was holding out for a higher sum. He believed the injuries Mr. Cannon had received would be felt by him afterwards, just as in the instance of the lost leg, and he made a statement to the jury to that effect. He said his leg had bothered him and gave that as his experience.

"He said he had lost his leg in some kind of railroad accident and he felt Mr. Cannon was in the same fix with reference to his accident. He might be bothered like Mr. Grambley's loss of a leg bothered him. He made that statement when he kept holding out for a higher sum and gave that as his reason. He was the only one that high."

Cordova testified: "A juror named Grambley was crippled. During the discussion as to how long the plaintiff would be injured, whether permanent or not, this juror stated he had been injured by the railroad and he was still suffering from it and that had been twenty years ago. They were discussing as to whether the plaintiff would be injured for some time to come and was still suffering, and it was in this connection that this juror mentioned the matter. That particular juror was voting for a large amount, giving that as a reason why a large amount should be given the plaintiff."

The third juror, Berry, testified: "Mr. Grambley, one of the jurors, made a statement to the jury giving his experience in connection with an injury to his limb, giving that as a reason why there should be a large verdict, stating he had lost his leg and he had suffered from it since and at times felt as if the leg he had lost were still there and paining him, and made a statement or argument to the jury to the effect that from that Mr. Cannon would probably have a like experience and it would last him through his life and the effect would be felt by him in some sort of way. He made the statement to the jury that nobody could tell, no person could tell the extent of another man's injuries and often a man had more' lasting injuries than the doctor testified to. Then he told his own experience, relating his experience and showed he had injuries more lasting than the doctor had indicated he would have; that his leg still hurt him. He had lost it in a railroad accident."

Each of the jurors further stated they were not in any wise influenced by Grambley's statements.

█ It is a matter of common knowledge that persons who have had limbs amputated often seem, for years, to have pain in the lost limb. Grambley's doubts and statements as to the conclusive effect of the testimony of the medical expert was well supported by common knowledge. The statements by Grambley of such matters of knowledge we do not regard as reversible.

Nor do we consider him to have been shown to be disqualified by bias and prejudice. He favored a much heavier award of damages

than the amount finally agreed upon. It cannot properly be said that a juror is shown to have been disqualified as a matter of law in a personal injury case simply because he had suffered an amputation from which he later suffered; because he doubted the correctness of the prognosis of a medical expert witness and favored a heavy award of damages in the particular case.

In our opinion the errors assigned show nothing reversible, and the judgment should be affirmed.

It is so ordered.