### BROOKS *et al. vs.* MINTURN.

An answer to a complaint after demurrer overrules the demurrer.

The owner of a ship, chartered by, and in the name of, his agent, may, although he is
not mentioned in the charter-party, be shown, by extrinsic evidence, to be the
principal in the contract, and will be allowed to avail himself of its provisions.

The register of a ship is admissible in evidence *in favor* of the person claiming to be
the owner, in connexion with other evidence tending to establish the ownership.

In the absence of any custom to the contrary, Sundays are computed in the calcula-
tion of *lay days* at the port of discharge ; but where the contract specifies *working
lay days*, Sundays and holidays are excluded in the computation.

It *seems*, that where a chartered vessel is seized and detained by a revenue officer of
the United States, the charterer cannot be made liable for demurrage during the
period of such detention.

APPEAL from the superior court of the city of San Francisco.
The facts will be found in the opinion of the court.

————————, for plaintiffs.

*A. T. Wilson*, for defendants.

*By the Court*, BENNETT, J.   The demurrer put in to the com-
plaint was overruled by the court, and the defendant filed his
answer.   The answer was, as has been heretofore held, a waiver
of the demurrer.

Smith & Lewis chartered the ship *Ocean* to the defendant,
to carry a cargo of coal from Panama to San Francisco. The
charter-party in the commencement of it purports to be an
agreement between " Messrs. Smith & Lewis, consignees of the
" British brig *Ocean*," and the defendant, and it is signed by

Smith & Lewis as principals, and not as agents. The plaintiffs, being the owners of the ship, bring the action to recover the freight agreed to be paid by the charter-party, and the defendant contends that the owners cannot maintain the action in their own names, inasmuch as the contract was made with Smith & Lewis, and not with the plaintiffs. That Smith & Lewis would be personally liable to the defendant for a breach of the contract, had any occurred, there can be no doubt. The authorities are clear as to that matter. But the question presented here is, whether persons not mentioned in the charter-party can be shown, by extrinsic evidence, to be the principals in the contract, and can be allowed to avail themselves of its provisions. Upon this point there is a great conflict in the decisions, and it would be a vain attempt to endeavor to reconcile them all. The rule, which seems to be supported by the greatest weight of modern authority, is that which is laid down by Baron Parke, in *Higgins* v. *Senior*, (8 *Mees. and Wels.* 843,) that it is competent to show, that one or both of the contracting parties were agents for other persons and acted as such agents in making the contract, so as to give the benefit of the contract, on the one hand, to, and charge with liability, on the other, the unnamed principals. (*See Story on Agency, secs.* 269, 270, *and notes; and the note to Thompson* v. *Davenport,* 2 *Smith's Leading Cases,* 222.) According to the above doctrine the suit was properly brought in the names of the plaintiffs, they thereby adopting and ratifying the act of Smith & Lewis in making the charter-party.

At the trial the ship's register was admitted in evidence, for the purpose of proving the plaintiffs to be the owners of the vessel. This evidence was objected to as inadmissible. I think the objection not well taken. The register of a ship is not conclusive evidence of ownership, perhaps not even *prima facie* evidence, but it is in some cases admissible as one item, in connection with other evidence, to establish the ownership. (*Abbott on Ship. marg. p.* 93, 94, *and note;* 2 *Phillipp's Ev.* 39, 40, 115; 3 *Kent, Comm.* 150; *Bixby* v. *The Franklin Insurance Co.* 8 *Pick.* 86.) It is clear, from these authorities, that the

Brooks v. Minturn.

register of a ship is frequently given in evidence, and without attempting to enumerate the cases in which it may, and in which it may not be introduced, I am of the opinion that it is admissible *in favor* of the persons claiming to be owners, in connection with other evidence tending to establish the ownership. Mr. Greenleaf, in his work on evidence, (1 *vol. sec.* 494,) it is true, says, that in favor of the person claiming as owner, the register is no evidence at all, being nothing more than his own declaration, but Mr. Justice BAYLEY, in *Tinkler* v. *Walpole*, (14 *East*, 226,) one of the cases cited by Mr. Greenleaf, says, that the registering of a vessel by an owner in his own name may be *prima facie* evidence for him that he is owner, because he thereby publicly challenges all persons that he is so; and he distinguishes such a case from one where a person is sued as owner, and the claim is attempted to be supported by such evidence made without his knowledge, and which he has not adopted.

The objection that there was no proof that Smith & Lewis executed the charter-party is untenable. That fact was admitted by the defendant's answer, and required no proof.

By the charter-party the defendant had twenty working lay days, within which to discharge the ship, and ten days thereafter on demurrage at thirty dollars a day. The legal signification of the terms *working lay days* is different from the meaning given to them by the counsel for the defendant. In the absence of any custom to the contrary, Sundays are computed in the calculation of *lay days* at the port of discharge; (*Brown* v. *Johnson*, 10 *Mees. & Wels.* 331;) but where the contract specifies *working lay days*, Sundays and holidays are excluded in the computation. (2 *Bouvier's Dic.* 663.)

On the arrival of the ship at San Francisco, both the ship and coals were seized by the custom-house collector; for what reason does not appear from the record, further than that they were seized for a breach of the revenue and navigation laws of the United States. The coals were from England. Were they seized for non-payment of duties? Was the ship guilty of a violation of the navigation laws? Neither of these questions

can be answered from the record, and consequently it cannot be determined whether the master of the ship, or the defendant, was in fault in causing the detention of the ship, and the non-delivery of the coals. If it were the fault of the master, I do not see how the defendant can be made liable for demurrage. Indeed I do not well see how he could, in any event, be liable. It does not appear that he was not ready, at all times, to receive the coals, or that the vessel was detained a single day by him. Her detention was owing to the fact of the seizure by a United States officer. But it is unnecessary to determine now, whether, under any circumstances, the defendant would be answerable for demurrage, and we pass the question, barely adding that there is nothing in this record to charge him on that ground.

Are the plaintiffs entitled to recover freight? They carried the cargo to the port of destination, and nothing further was required of them except delivery. But the coal was delivered by the plaintiffs and received by the defendant, although after a detention of three months. The fact of the detention cannot deprive the plaintiffs of their right to receive the freight, subject to a deduction for such damages as the defendant may have sustained by reason of the non-delivery when the defendant was first ready to receive the cargo, in case it was the fault of the master that the cargo was not then delivered, and provided such a defense be admissible under the pleadings. If it was the fault of the defendant, then there should be no deduction from the full amount of freight agreed to be paid.

From the view above taken it follows that there must be a new trial for the purpose of inquiring—1st. Whether the seizure by the collector was legal, and if so, whether it was made on the ground of a violation of the laws of the United States by the master of the vessel, or by the defendant. If the seizure were legal, and occasioned by any act or neglect on the part of the master, the plaintiffs would be entitled to recover the freight, subject to the deduction above mentioned, in case the pleadings would admit such deduction, but could recover nothing for demurrage. If the seizure were legal, and occasioned by any act

or neglect on the part of the defendant, such as a neglect to pay duties on the cargo, then, the plaintiffs will be entitled to recover the full amount of freight, (*see Morgan* v. *The Insurance Co. of North America*, 4 *Dallas*, 455,) and perhaps demurrage, upon which latter subject I express no opinion at present. If the seizure were illegal, I think the plaintiffs may, within the principle of the case of *Morgan* v. *The Insurance Co. of North America*, recover the full amount of freight, but no demurrage. In such case the plaintiffs must look to the collector for their damages.

New trial ordered, costs to abide event.