## PEDERSEN and others *v.* EUGSTER & Co.[*]

*(District Court, E. D. Louisiana.   December, 1882.)*

**1. WORKING DAYS.**

The expression "working days" has, in commerce and jurisprudence, a settled and definite meaning; it means days as they succeed each other, exclusive of Sundays and holidays.

**2. CHARTER-PARTY—PAROL EVIDENCE TO CONTRADICT—CUSTOM.**

In a written instrument of charter-party, where an unambiguous term is used, and which has an accepted signification, both in commercial and judicial language, proof of usage will not be permitted to show that such term has a local meaning repugnant to its settled sense.

*Edward H. Farrar,* for libelants.

*Samuel P. Blanc* and *Frank N. Butler,* for defendants.

BILLINGS, D. J.   In this cause the only question submitted is as to the meaning of the words "working days," as used in a charter-party executed in the city of New Orleans.   The vessel was chartered for a voyage to Trieste.   The charter-party provided "that lay days for loading shall be as follows: If not sooner dispatched, 14 working days, Sundays excepted, for loading; and eight days, Sundays excepted, for discharging at Trieste."   The answer admits the allegations of the libel that —— days were consumed in lading beyond the lay days allowed in the contract, if only Sundays and holidays are to be excluded in the computation, and avers that by the usage of the port of New Orleans, with reference to cotton-carrying vessels, to which class the chartered vessel belonged, rainy days are also excluded, and that when the days wherein cotton could not be laden on account of the weather are also excluded, the ship's time of loading was within the period allowed by the charter-party.

It is thus seen that the sole question is as to the meaning of the term "working days," and whether that meaning can be varied by parol testimony.

The civil day is the solar day, and is measured by the diurnal revolution of the sun, denoting the interval of time which elapses between the successive transits of the sun over the same hour circle, so that the civil day commences and terminates at midnight.

The expression "working days" has in commerce and jurisprudence a settled and definite meaning; it means days as they succeed each other, exclusive of Sundays and holidays.   The court give this precise and formal definition in *Brooks* v. *Minturn,* 1 Cal. 483.   See,

[*]Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

also, Bouv. Law Dict. *verbis*, "lay days," and Webst. Dict. under the head "working day."

If the word "days," alone, is used with reference to lay days or days for loading a ship, all the running or successive days are counted. If the term "working days" is used, all days are counted except Sundays and holidays. If the parties wish further to except days when the weather prevents work, they use the expression "weather working days," or "with customary dispatch," or some other expression which clearly indicates the intention to recognize that days of inclemency from winds and storms are also excepted.

Taking into consideration the cycle of years since this term "working days" has received a commercial interpretation, as sanctioned by the judges, and the frequency and universality with which courts have adhered to that interpretation, for parties to use the expression "working days" in a charter-party is to express that, except Sundays and holidays, all days are to be counted, whatever be the state of the weather.

Now, to admit evidence that at the port of New Orleans any usage prevails which would vary this legally-ascertained definition, would be to admit parol evidence to contradict a written contract.

I am aware that in the many cases in which courts have been called upon to limit the admission of parol to affect written evidence, some may be found where the premises have not been sufficiently scrutinized, and thus laxity will be found in the conclusion, and where, therefore, a proper exception has been allowed to obliterate one of the most salutary rules of evidence. But the best-considered and most-discriminating cases, and the commentators of highest repute, establish, in the language of Chancellor (then Chief Justice) KENT, in *Frith* v. *Barker*, 2 Johns. 335, that "usage ought never to be received to contradict a settled rule of law." *Homer* v. *Dorr*, 10 Mass. 26. Phillips, in his treatise on Evidence, page 436, (marginal paging,) says: "Where the legal effect of an instrument or of the terms in it has been settled, no evidence of commercial usage is admissible." To same effect see Starkie, Ev. pt. 4, pp. 1036, 1038. In *Angomar* v. *Wilson*, 12 La. Ann. 857, our own supreme court excluded testimony as to the meaning of the term "household furniture," on the ground that "there was no ambiguity in the expression." In *Woodruff* v. *Merchants' Bank*, 25 Wend. 674, affirmed in the court of errors, (S. C. 6 Hill, 174,) parol evidence of usage, to show that days of grace were not allowed upon an order upon a bank to pay to the order of A. B., on such a day, a certain sum of money, was excluded;

the court, through Judge NELSON, saying that "the effect of the proof of usage as given in this case, if sanctioned, would be to overturn the whole law on the subject of bills of exchange in the city of New York." The doctrine is adhered to in *Bowen* v. *Newell*, 8 N. Y. 194.

The case presented is this: In a written agreement, parties have used a term which is unambiguous, and which has an accepted signification, both in commercial and judicial language. Proof of usage is sought to be introduced to show that in the very respect in which this term had its origin and has had its world-wide employment, it has a local meaning repugnant to its settled sense. To permit this would be to introduce ambiguity where none exists, and defeat the clearly-expressed intent of a written contract.

There must be judgment for the libelant upon the answer of the defendants.