W. L. WHITAKER ET AL. V. W. W. DILLARD ET AL.

No. 8001.

1. **Injunction—Case in Judgment.**—Certain taxpayers of Bowie County applied for temporary injunction restraining the county authorities from erecting necessary public buildings at the geographical center of the county elected to be the county seat at an election November, 1890. The injunction was refused, and the case was put on the docket to be heard at the next term of the District Court. Before the trial the public buildings had been built and paid for and the county records moved. Injunction was again refused. On appeal, *held*, as the writ of injunction is used to prevent injuries, and not to afford remedy for injury inflicted, the appeal might be disposed of on the ground that the acts which it was the purpose of the suit to prevent had been accomplished when the cause was tried, in absence of clear averment of further threatened injury such as plaintiffs as taxpayers would have the right to prevent.

2. **Minute Books of Commissioners Courts.** — While it is required that the orders of the county judge for an election for the removal of the county seat of his county shall be entered of record in the minutes of the Commissioners Court, it is not prescribed that there shall be but one minutes book kept. An entry of an order in any book kept by the court is sufficient; e. g., an order entered upon the "Commissioners Court docket" which contained other entries of the same nature was a substantial compliance with the law and such entry was legal.

3. **Order for Election to Move County Seat.**—It is not necessary to the validity of an order for an election to move a county seat that the places to be voted for shall be enumerated. The voters may select any place whether noted in the order or not.

4. **Geographical Center of County.** — The term *geographical center* used in relation to the location of a county seat has a meaning certain and not to be misunderstood. Any one voting for *the geographical center* for the county seat must have intended to vote to locate the county seat at a place where the court house and other public offices and buildings required by law could be erected at a place including the center of the county.

5. **Ascertaining Center of County.** — The statute provides that maps showing the locality of the center of a county may be certified from the General Land Office. This was proper information to voters as to the *geographical center* voted for.

6. **Center of County.** — It was proper to count as for the *geographical center* the votes cast in a precinct for "the center of the county." The terms are synonymous.

APPEAL from Bowie. Tried below before Hon. J. L. Sheppard. The opinion states the case.

*McLean & Hynson*, for appellants.—1. Voters and taxpayers in a county are proper parties to enjoin unauthorized expenditures of county funds; and where it becomes necessary to the determination of a right involving pecuniary interest to inquire into the legal effect of a county seat election, when the election is set up to defeat that right, the court ought to consider the election, and pending this inquiry it is the duty of the court to restrain the expenditure of public money in the erection of buildings at either of the places claiming to be the lawful county seat. Caruthers v. Harnett, 67 Texas, 128; Rice v. Smith, 9 Iowa, 570; High on Injunc., sec. 1321; Sayles' Civ. Stats., art. 702.

2.   The court erred in his finding of fact that the geographical center of said county was designated by the Commissioner of the General Land Office of the State, because the evidence is insufficient to support said finding.

3.   The court erred in his finding that the qualified voters of Bowie County were informed and knew where the geographical center of Bowie County was before the 25th day of November, 1890—that is, they knew about where it was; because there is no evidence to support said finding, and because if there is any evidence upon that issue it is insufficient to support said finding.

4.   It was a material issue in this cause to determine whether or not the "geographical center" received a majority of all the votes cast at the election, and the returns from the De Kalb voting precinct were admissible for that purpose.   People v. Minck, 21 N. Y., 539; Kane v. People, 5 Neb., 509.

5.   The judgment of the court is erroneous in holding the election legal and valid, because the petition to the county judge to order an election for removal of county seat did not name any place to be voted for; the "geographical center" not being a place as contemplated by the laws authorizing the removal of county seats.

6.   The judgment of the court is erroneous in holding the election legal and valid, because there was no such place as the "geographical center" at the date of the election; the said center had no visible, material, or physical existence at that time, and the voters did not and could not know for what place nor where they were voting to remove the county seat.

7.   An election for the removal of a county seat is not legal and valid unless the petition names a place to be voted for; and an election is not legal and valid unless some place is voted for at the election. Sayles' Civ. Stats., arts. 697, 699, 700; Anderson's Dic. of Law, "Place," 774; The State v. Dinsmore, 5 Neb., 145.

8.   It was the duty of the county judge to open the returns of the election and count them and declare the result as shown by the face of the returns; he had neither authority nor discretion to count the 317 votes cast at De Kalb for "center of county" (as shown by the returns) for the "geographical center" of Bowie County; and it was the duty of the District Court in this suit to correct the error of the county judge in counting the vote and declaring the result of the election.   Sayles' Civ. Stats., art. 700; People v. Kilduff, 15 Ill., 492; People v. Canvassers, 12 Abb. (N. Y.), 77; Kortz v. Canvassers, Id., 84; Leigh v. State, 69 Ala., 281; Bull v. Southwick, 2 N. Mex., 321; State v. Peacock, 15 Neb., 442; Patton v. Coats, 41 Ark., 112.

9.   Statutes authorizing the removal of county seat and statutes of like character, being legislative or law making in their scope and operation, will be strictly construed, and every requirement of the statute

precedent to the election must be complied with.   Sayles' Civ. Stats., arts. 697, 698.

On construction of legislative statutes:  Boone v. State, 10 Texas Ct. App., 418;  Prather v. State, 12 Texas Ct. App., 401;  Brown v. Reese, 67 Texas, 318.

*J. O. Mahaffey, S. H. Smelser,* and *Crawford & Crawford,* for appellees, cited Minard v. Hood, 68 Ill., 121; 1 High on Injunc., sec. 23; Harrall v. Lynch, 65 Texas, 147; Caruthers v. The State, 67 Texas, 132; The State v. Cravens, 22 Iowa, 346; Hawes v. Miller, 56 Iowa, 395; The State v. Metzger, 26 Kans., 395; Conley v. Fleming, 14 Kans., 386; Dishon v. Smith, 10 Iowa, 217; Ewing v. Duncan, ante, 230; Cool. on Const. Lim., 6 ed., p. 768, and note.

STAYTON, CHIEF JUSTICE.—This suit was brought by appellants, who are alleged and shown to be property owners and taxpayers in Bowie County, to restrain the county judge and commissioners of Bowie County from building a temporary court house or making any expenditure of money of the county for public purposes at a place which defendants claim was selected as the county seat at an election held on November 25, 1890, for the purpose of removing the county seat from Texarkana and locating it at the place claimed to have been thus selected.

They further sought to restrain these officers from removing any of the offices, books, records, furniture, or papers belonging to the county or the public offices thereof from the town of Texarkana to any other place, on the theory that at the election referred to no place other than Texarkana was selected for county seat.

The petition praying such relief was presented to the district judge on January 6, 1891, for the purpose of obtaining a temporary injunction, but the judge required notice of the application to be given to the defendants and set the application for hearing in chambers on the 13th of the month, and on the 15th the writ was refused and the cause directed to stand for hearing on its merits at the next regular term of the court, when the writ was again refused.

Prior to the final trial the buildings contracted for at the time injunction was first sought had been completed and paid for; and, although there are averments in the petition to the effect that plaintiffs fear that defendants will make other expenditures of money for the purpose of making other improvements deemed necessary for county purposes at the place claimed to have been selected as the county seat at the election before referred to, it is, to say the least, doubtful if they allege such threatened injuries as would justify the issuance of an injunction; while on the other hand it is made to appear that no intention to erect other buildings or incur other expenses at the new county seat existed

at time of trial; but that such buildings and expenditures would be necessary at some time was shown, if the county seat should remain permanently at the place where the temporary court house had been erected.

As the writ of injunction is used to prevent injuries, and not to afford remedy for injury inflicted, this appeal might be disposed of on the ground that the acts which it was the purpose of this suit to prevent had been accomplished when this cause was tried, in the absence of clear averment of further threatened injury such as plaintiffs as taxpayers would have the right to prevent; but in view of the questions out of which this litigation arises, and of the expressed wish of the parties for an expression of opinion by this court upon these questions, we have thought it proper to consider them.

Prior to November 25, 1890, Texarkana was the county seat of Bowie County, but on that day an election was held which it is claimed by appellees resulted in the selection of a place including the geographical center of the county for the future county seat; while it is claimed by appellants that such election was not legally held, because the county judge did not enter the order for the election in the minutes of the Commissioners Court, and because the place to which the removal was sought was not designated with necessary certainty.

The statute regulating elections for the removal of county seats requires the county judge on proper application "to make an order in writing upon the minutes of said Commissioners Court for the holding of an election at the various voting precincts in said county on a day therein named," and it is claimed that this was not done, and that for this reason the election was illegal.

The facts with reference to the order are that the order was entered in what is termed by the clerk, who testified in the case, "The Commissioners Court docket, * * * which contains a number of orders of the Commissioners Court and county judge which have not been copied in the minute book of the Commissioners Court," and this book seems to have been used to record matters affecting elections in the county; but it was shown that the Commissioners Court kept what was known as a "minute book," in which the order was not entered.

It is not necessary that the County Commissioners Court shall keep only one book in which to make a record of its proceedings, but it may keep books in which proceedings relating to some particular matters may be properly recorded, while proceedings relating to other matters are recorded in other books.

The statute provides that the County Commissioners "Court shall cause to be procured and kept in the clerk's office suitable books in which shall be recorded the proceedings of each term of the court," and there can be no doubt that each book kept and used for this pur-

pose is within the meaning of the law a minute book and the entries therein made minutes.

It seems to us that the objection now under consideration is without facts to support it, and it becomes unnecessary to consider whether under the particular statute the election could be held illegal if it appeared that the order had never been entered at all, in the absence of some other fact affecting the fairness of the election.

In Ewing v. Duncan, decided at the present term (ante, p. 230), it was held that the failure to enter an order in the minutes of the Commissioners Court directing the holding of an election for the organization of a new county, which included the selection of a county seat, would not render the election illegal.

The application for election ordered and held was one asking an election to determine whether the county seat should remain at Texarkana or be removed to the geographical center of Bowie County; and it is claimed that the order for the election and the election were invalid, "because the petition to the county judge to order an election for removal of county seat did not name any place to be voted for; the geographical center not being a place as contemplated by the laws authorizing the removals of county seats;" and "because there was no such place as the geographical center at the date of the election; the said center had no visible, material, or physical existence at that time, and the voters did not and could not know for what place nor where they were voting to remove the county seat."

We do not understand that the statute requires a petition for an election to remove a county seat, nor an order directing an election for that purpose, to state to what point it is desired to remove a county seat, nor that when an election for such a purpose is ordered the people may not vote to place the county seat at any place that may suit them, just as fully as they may select and vote for any person at a general election for county or State officers as they please. Neither the application for the order for an election nor the order of the county judge can restrict the right of the qualified voters to vote for as many places as they please. The order must fix the time when and places where the election must be held, but it can place no restriction on the right of any voter to vote for any place he may prefer.

It does become important, however, that the votes shall so designate the place voted for that it may be identified, and thus the actual locality of the place selected for county seat be determined. It is contended that the words "geographical center" should be restricted so as to mean nothing more than the word "point" when used in considering a geometrical problem or proposition—something without length, breadth, or thickness, without magnitude or parts; from which it would follow that no place sufficient for the purposes of a county seat was selected.

But it is obvious that such a meaning was not attributed to the words when used with reference to the selection of a place for a county seat, and that any person so voting must have intended and desired to be understood as voting to locate the county seat at a place where the court house and other public offices and buildings required by law could be erected—at a place that would include the center of the county and have such area as was necessary for all purposes for which county seats are used and required by law to be established and maintained.

The Constitution provides that a majority of electors "may remove a county seat from a *point* more than five miles from the geographical center of the county to a *point* within five miles of such center," but no person would contend that the word "point," as here used, was used in any sense other than that usually attached to the word "place." When seeking for the meaning of a word we must look to the connection in which it is used and the subject matter to which it relates, and as used in relation to the location of a county seat the words "geographical center" of a county have a meaning certain and not to be misunderstood.

It seems to be contended further that the voters could not know where the center of the county was, that it would require measurement or survey to determine its true locality, and that for this reason they could not vote with that intelligence necessary to a choice of location; but the same might be said of any place that might be designated in the ballot, for in every instance the large majority of voters would have to acquire information as to actual locality of the place selected, however well it might be described.

In this case it is shown that prior to the election a map of the county had been obtained from the Commissioner of the General Land Office on which was designated the center of the county, and this had been filed in the office of the county clerk for twenty-three days before the election was held. This was the manner in which the Constitution as well as the statute required that fact to be ascertained (Const., art. 10, sec. 2; Sayles' Civ. Stats., art. 698); and if it was necessary that voters should have opportunity to know approximately where the center of the county was, this was thus furnished. From this voters could ascertain with more certainty the place designated the geographical center of the county than could they from many other descriptions of place the certainty of which would not be questioned. If the description of the place voted for be such that persons using the ordinary means for ascertaining the real locality of the place described can ascertain it, that is enough, even if it were necessary that the voter should be so advised as to vote intelligently, and it furnishes all the information necessary to enable the officer whose duty it is to declare the result of the election so to declare it, and to those charged with the duty of locating

public buildings the necessary means to ascertain where they must be placed. Such a description is sufficient for all purposes affecting the legality of an election.

The returns from one of the voting precincts showed that a certain number of votes were cast against the removal of the county seat from Texarkana, and that another number voted for the location of the county seat at "center of county," and that to give to the geographical center of the county a majority of all the votes cast it was necessary that those be counted for the geographical center, and the returning officer so counted them. It is now insisted that this was error, and that these votes should have been counted for a third place known as the "center of the county" as distinguished from the geographical center of the county, which would have given to Texarkana a plurality of the entire vote cast; but we are of opinion that the vote was properly counted. The word "county," when not in some way qualified, means a territorial subdivision of a State separated from the rest of its territory for governmental purposes, and the center of a county, when in no way qualified, means simply and only the center of that territorial subdivision—its geographical center and nothing else.

From these conclusions, even if it be held that the threatened injuries alleged are such and so imminent as to entitle a taxpayer to protection through injunction, it follows that there was no illegality in the election, uncertainty as to the place selected, or improper count of votes for that place; and the judgment of the District Court must be affirmed. It is so ordered.

*Affirmed.*

Delivered June 12, 1891.