## OSAGE OIL & GAS CO. v. CAULK.*
### (No. 1967.)

(Court of Civil Appeals of Texas. Amarillo. May 17, 1922. Appellant's motion for rehearing denied June 14, 1922.)

**1. Sunday ⬅️17—Oil driller not entitled to compensation for his rig on Sundays during suspended period.**

Where contract provided for drilling and swabbing wells for a certain time, but on account of an order of the Railroad Commission the parties entered into a suspension contract, wherein defendant agreed to pay $45 a day while the rig remained upon the property, the owner of the rig was not entitled to compensation for Sundays included in the period of suspension, in view of Pen. Code 1911, arts. 299, 300, prohibiting labor on Sunday, regardless of what the intention of the parties was.

**2. Trial ⬅️352(5)—Separate items of indebtedness to be submitted separately.**

Where petition set out several items of indebtedness separately and presented as many different issues as there were items, and the evidence was conflicting upon these items, they should have been submitted separately in special issues under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a.

**3. Appeal and error ⬅️1062(1)—Failure to submit items separately in special issues held harmless.**

Error of the court in not submitting items of indebtedness separately in special issues,

under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, was harmless, where the only two items contested in the appellate court were submitted in separate special issues.

**4. Principal and agent ⬅️23(2)—Relation may be shown by circumstances.**

Agency may be proved by circumstances in suit by third party.

**5. Pleading ⬅️381(2)—Evidence of preparation for work not within claim for doing work.**

Under a claim for swabbing oil wells, evidence tending to show preparations to work was not admissible, as the allegata and probata must correspond.

**6. Evidence ⬅️178(6, 11)—Secondary evidence admissible where instrument lost.**

Oral testimony was admissible to show the contents of an account book and a telegram, where it was shown that the book was lost and the telegram destroyed.

**7. Principal and agent ⬅️120(6)—Similar contracts admissible to show agency.**

Where agency was involved in action on contract, evidence that the alleged agent had previously made a similar contract with another was admissible as a circumstance tending to show the authority of the alleged agent.

### On Motion for Rehearing.

**8. Contracts ⬅️138(6)—Unnecessary to allege evident illegality of contract.**

Where it appears to the court that a contract was illegal because providing for performance of labor on Sunday in violation of Pen. Code 1911, art. 299, it is the duty of the court to at once decline to enforce it, even though such illegality has not been pleaded.

**9. Trial ⬅️352(4)—Court should not submit issue not raised by pleading.**

The court should not submit an issue not raised by the pleadings, even though there is evidence to support it.

**10. Judgment ⬅️251(1)—Judgment on evidence of facts not pleaded unauthorized.**

Judgment based upon evidence of facts not pleaded must be reversed.

**11. Appeal and error ⬅️662(3) — Appellee bound by qualifications of accepted bill of exceptions.**

Having accepted a bill of exceptions with a qualification by the court, the appellee is bound by it.

**12. Trial ⬅️255(13)—Party must submit charge giving definition desired.**

Where court submitted special issue, "Did L., on behalf of defendant, * * * employ the plaintiff, * * * to move his star rig, etc.?" defendant cannot complain that the court failed to submit a special charge defining the term "agent," under Vernon's Sayles' Ann. Civ. St. 1914, art. 1984a, such word not appearing in the issue, as the defendant, if he desired such definition, should have submitted a special charge giving it.

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction October 18, 1922.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Suit by Earl J. Caulk against the Osage Oil & Gas Company and another. Judgment for plaintiff, and named defendant appeals. Judgment, less amount remitted, affirmed.

Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for appellant. ·

Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellee.

HALL, J. The appellee, Caulk, sued the appellant, Oil & Gas Company, a corporation, making the Magnolia Petroleum Company, a joint-stock association, a party defendant. The material allegations of the plaintiff's petition are that on the 3d day of July, 1919, he made a contract with the Osage Oil & Gas Company, by the terms of which said company employed the plaintiff to drill in and swab wells at $135 per day for a period of not less than 30 days. The contract was made an exhibit to the petition. He further alleges that after the execution of the contract he made a supplemental contract with said Osage Company, suspending the operation of the first contract for a period of not exceeding 60 days, which suspension was caused by an order issued by the Railroad Commission, the supplemental contract providing that during said suspension the defendant should pay the plaintiff at the rate of $45 per day, beginning with and including the 6th day of July, 1919, the date when the plaintiff moved his rig on the property of the defendant. The supplemental contract was also made an exhibit to the petition, marked "Exhibit B." Plaintiff further alleged that in accordance with the original contract, marked "Exhibit A," he moved on the defendant's property, was forced to keep his rig idle there for a term of 60 days, wherefore, under and by virtue of the supplemental contract, the defendant the Osage Company became indebted to him in the sum of $2,700, being 60 days, at $45 per day. At the end of the said 60-day period he commenced setting up his star rig on the properties of the defendant, and spent September 4, 5, and 6, 1919, in rigging up, and thereafter, on the 6th day of September, up to and including the 26th day of October, 1919, he was employed in the work of drilling in and swabbing wells of the defendant under the terms of his first contract. He sets out the specific days upon which he worked, aggregating 69, for which he claims compensation at the rate of $135 per day, making a total due him of $9,315. He further alleges that he made a verbal contract with the defendant the Osage Company to swab a well on Block 88, and was employed 9 days in the work, at $135 per day, and sued for the total indebtedness, save and except a credit of $5,000. The Magnolia Petroleum Company was made a party defendant because it was alleged said company was receiving the oil from said property. By supplemental petition the plaintiff made a detailed statement of the debts upon which his work was done. The defendant the Osage Oil & Gas Company filed an answer, which did not deny the execution of the contracts, and alleged that the plaintiff failed to perform services under the same by failing to furnish his personal services or good material and workmen. The answer contains no general denial. Special issues were submitted, in reply to which the jury found as follows: (1) That the defendant Osage Oil & Gas Company is indebted to the plaintiff upon the contracts sued upon in the sum of $6,902.50 and $465.56 interest. (2) One Locke on behalf of defendant, employed the plaintiff to move his star rig on block 88, and to drill in and swab the well on said block. (3) Locke had authority from the Osage Oil Company to employ plaintiff to drill in and swab on block 88. (4) That plaintiff was engaged 9 days in the work, preparatory to drilling in said well. (5) That the defendant company is due Caulk $2,295 for the items charged in the latter's pleading as "17 days labor on lease at $135 per day, from September 7 to 22, 1919, inclusive." (6) That the defendant company is indebted to plaintiff in the sum of $675 upon the item charged in the petition as "5 days' swabbing the well at $135 per day, being from November 15th to 19th, inclusive." In accordance with the verdict, the court rendered judgment in favor of the plaintiff and against the defendant Osage Oil & Gas Company for the sum of $8,665.06.

The first proposition urged is that there is no testimony to support the finding as to the tenth item charged in plaintiff's supplemental petition, covering 5 days at $135 per day from November 15th to November 19th, inclusive. The appellee himself testified that he did swab the well during the 5 days designated. It is true that he seemed to be confused, and there was some uncertainty shown upon his cross-examination in his effort to explain a difference of $1,000 total between the amount of the account sued upon and the one he gave the defendant immediately after quitting work. There are also some uncertain and apparently contradictory statements as to when he finally abandoned the work, but these are all matters which it was the duty of the jury to settle, and we do not feel warranted in the state of evidence in disturbing the findings upon such issue.

[1] The second proposition is that it was error for the court to charge appellant with eight Sundays at $45 per Sunday in the 60-day extension contract while his rig was shut down by the Railroad Commission of Texas The original contract provided that Caulk would use his star machine for a period of not less than 30 days in drilling and swabbing the well at the price of $135 per day. After the order of the Railroad Commission

the parties entered into the following suspension contract, which was attached to the original:

"It is agreed that the above, foregoing attached contract be suspended during the pleasure of the party of the first part, not exceeding sixty days from this date, and that during such suspension party of the first part shall pay party of the second part the sum of $45.00 per day, beginning with and including July 6th, the day upon which the rig was moved upon the property," etc.

The appellant endeavored to introduce evidence as to what the intention of the parties was with reference to Sunday labor and the use of the machine on Sundays. This was excluded, but there is no assignment based upon such action of the court. It seems that swabbing was suspended for fully 60 days, beginning with July 6th, and in entering judgment the court permitted the appellee to recover $45 per day under the suspension contract for eight Sundays, included within the 60-day suspension. That is the sole question presented by this assignment. Penal Code, art. 299, prohibits labor on Sunday. Article 300 provides that article 299 shall not apply to works of necessity, and to various occupations therein set out, such as running steamboats, railroad cars, stages carrying United States mail and passengers, hotels, restaurants, livery stables, etc., but work upon an oil well is not one of the excepted occupations. We must presume that in the execution of the original and supplemental contracts the parties did not intend to contract with a view of violating the Sunday law by working on Sundays. As stated, there is no evidence showing that the work contemplated to be done under the original contract was a work of necessity. Presuming that it was not intended by the contract to require Caulk to work on Sunday, since such a contract would be illegal, he would not, under the suspension contract, be entitled to compensation for days upon which he could not lawfully work. In the note to Stevenson v. Donnelly, Ann. Cas. 1917E, 946, we find this question briefly annotated. We quote from the note as follows:

"But under a contract providing that services are to be computed by the day it has been held that pay is not to be allowed for intervening Sundays in the absence of an express stipulation. Patterson v. Patterson, 2 Pearson (Pa.) 170. In Brown v. Rasin Monumental Co., 98 Md. 1, 55 Atl. 391, in construing a contract giving the right to remove tar from a pond, and which provided that the contract might be terminated if the work of removing the tar was suspended at any time for 10 days, it was held that intervening Sundays were not to be counted as part of the 10 days. * * * 'Sunday is "a day" and therefore may be one of "10 days," but the question is whether the "10 days" mentioned in this agreement include the kind of a day Sunday is, and in order to do that we must bear in mind

the connection in which the term is used. When the plant was completed, the appellants were at once to "begin and thereafter diligently and continuously remove the tar from said pond." It cannot be contended that it was contemplated by the parties in the use of those terms, that the appellants should work on Sundays. To do so necessarily would be a violation of the statute law of the state, and hence it cannot be presumed that the parties so intended. * * * The suspension prohibited was on the days they were under obligation to work, and not on those on which no work was contemplated. There is no provision in the agreement that indicates that the parties had any other intention in the use of this term.' * * * And it has been held that a clause in charter party, providing that, 'loading and discharging as fast as the steamer can work, but a minimum of seven days to be allowed merchants,' meant that the number of days allowed for the loading and discharge of the vessel was 7 working days. Commercial Steamship Company v. Boulton, L. R. 10 Q. B. Eng. 346, 3 Asp. M. Cas. 111; 44 L. J. Q. B. 219, 33 L. T. N. S. 707, 23 W. R. 854."

It is held in 38 Cyc. 334, that intervening Sundays are excluded where working or business days only are manifestly intended to be included in the period of time prescribed by the contract, citing Brooks v. Minturn, 1 Cal. 481, and the Boulton Case, supra. 26 R. C. L. 753, § 28, says:

"In the absence of any custom to the contrary, Sundays are computed in the calculation of lay days but where the contract specifies 'working lay days' Sundays and holidays are excluded in the computation of time allowed for the discharge of a ship"—citing the note to the Stevenson Case, supra.

No custom is shown in the instant case, it being illegal to prosecute work of this kind upon Sunday, for us to hold that appellee was entitled to recover for the eight Sundays included within the 60-day period is tantamount to holding that a contract to drill and swab oil wells on Sunday, without a showing that the work is necessary, is legal. We, therefore, conclude that the court erred in decreeing a recovery at $45 per day for the eight Sundays included in the 60-day period.

[2, 3] By the first special issue the court asked the jury in what sum of money the defendant was indebted to the plaintiff under the plaintiff's contract. The supplemental petition, which sets out the several items of indebtedness separately, presented as many different issues as there were items. The evidence was conflicting upon these various items, and under V. S. C. S. art. 1984a, they should have been submitted separately. Emerson-Brantingham Co. v. Roquemore (Tex. Civ. App.) 214 S. W. 679. The error, however, is harmless, in that as to the only two items contested in this court the trial judge submitted separate special issues at appellant's request.

[4] Under several propositions it is con-

tended that Locke was not the agent of the defendant oil company, authorized to enter into the contract with Caulk. The evidence upon this issue is voluminous, but since agency may be proved by circumstances there is ample evidence to support the finding of the jury that he was the defendant's agent and was fully authorized to make the contracts.

[5] The fourth special issue inquired of the jury as to how many days Caulk was engaged in the work on the lease preparatory to drilling in the well. This issue was objected to because there was no pleading to support it and no evidence relating to it. We agree to the contention that the pleadings do not support this issue. By his supplemental petition the plaintiff sued to recover $1,215 for 9 days' work in November for swabbing the well, but neither in the original nor supplemental petition does he allege that defendant is indebted to him in any amount for time and work preparatory to doing the swabbing, nor is there any pleading tending to show his right to recover for preparatory work under the terms of his contract. As disclosed by the record, he did not actually do any swabbing. He must recover, if at all, upon the cause of action alleged. Under a claim for swabbing, evidence tending to show preparations to work was not admissible. The allegata and probata must correspond.

[6] Objection was made to the admission of oral testimony going to show the contents of an account book and of a telegram. As a predicate for the introduction of this evidence it was shown that the book was lost, and that the original telegram had been destroyed. Under these circumstances secondary evidence was admissible.

[7] Objection was made to proof by the witness Cox that Locke representing the defendant had previously made a contract with him similar to the one made with the plaintiff. This evidence was offered as a circumstance tending to show the authority of Locke in making such contracts for the defendant, and was clearly admissible. Mills v. Berla (Tex. Civ. App.) 23 S. W. 910; I. & G. N. Ry. Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515.

The remaining assignments are without merit, and are therefore overruled.

For the reasons pointed out, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

[8] The appellee insists that we should not have reversed the judgment upon the ground that the court permitted him to recover at the rate of $45 per day for the eight Sundays included within the 60-day suspension contract, because the illegality had not been pleaded. The original contract is one providing for day labor at the rate of $135 per day, not to exceed 30 days. The supplemental contract provides for suspension of such labor, not to exceed 60 days, and fixes the rate of compensation at $45 per day during such suspension. Article 299 of the Penal Code provides that any person who shall labor on Sunday shall be fined not less than $10 and not more than $50. In the light of this article a contract providing for labor of a character not expressly permitted by subsequent articles of the code is prima facie illegal. The kind of labor provided for by the contract does not fall within any exception found in the statute. It is insisted that we should take judicial notice of the fact that swabbing and pumping oil wells is done on Sunday. We might as appropriately take judicial notice of the fact that gambling and drinking intoxicating liquors, contrary to law, is done on Sunday, but that would not make such acts legal. The rule is that whenever the illegality of the contract sued upon, appears it is the duty of the court to at once decline to enforce it, even though such illegality has not been pleaded. Bishop v. Japhet (Tex. Civ. App.) 171 S. W. 499; Keith v. Fountain, 3 Tex. Civ. App. 391, 22 S. W. 191.

[9, 10] It is further insisted that we erred in holding that the appellee was not entitled to recover upon the item of $1,215 for 9 days work in November. This recovery is based upon an allegation that the appellee swabbed the well on block 88 for 9 days, and under the contract is entitled to recover $135 per day therefor. The proof is that he did not swab the well for 9 days, and the only evidence remotely bearing upon that allegation is that he worked a number of days preparing to swab it. The court submitted special issue No. 4, as follows:

"If you answer special issue No. 3 Yes, then advise how many days the said plaintiff, Earl J. Caulk, was engaged in the work on said lease preparatory to drilling in said well."

The objection to this issue was there was no testimony to support it, and it "does not conform with the pleadings in the case." As stated in the original opinion, appellee did not seek to recover for the value of work done preparatory to actual drilling or swabbing, and the court should not submit an issue not raised by the pleadings, even though there is evidence to support it. S. A. & A. P. Ry. Co. v. Stuart (Tex. Civ. App.) 178 S. W. 17. Moreover, a judgment, based upon evidence of facts not pleaded, must be reversed. Taylor v. Long (Tex. Civ. App.) 16 S. W. 1084; Brown Grain Co. v. F. & M. National Bank (Tex. Civ. App.) 173 S. W. 942. We think there can be no doubt as to this question. Although there is proof to show that the appellee worked 9 days getting his machinery upon the ground and in shape to begin to swab, and although the issue is submitted to the jury and a finding returned in favor of appellee, no judgment can be based thereon, because it is not pleaded as a ground of recovery.

[11] Further objection is made to the holding with reference to proving the contents of the telegram. The manager of the Western Union Telegraph Company, Pogenphol, testified that the original telegram had been destroyed. The court qualified the bill of exceptions by stating that secondary evidence of the telegram was admitted because it was shown that the original was destroyed. Having accepted the bill with this qualification, the appellee is bound by it. The motion for rehearing is therefore overruled.

Appellee offers to remit the two items upon which he recovered, viz. $360, for the eight Sundays included in the time of suspension and $1,215 for the 9 days' preparatory work, if his motion for rehearing is overruled, and then prays that after such remittitur the judgment be affirmed. In accordance with this request, the remittitur is ordered entered, and judgment is here rendered for appellee, less the two items above mentioned, and the legal interest thereon.

[12] The appellant company moves the court, in the event the remittitur is entered and the judgment is affirmed for the residue, that its motion for rehearing be considered. We have carefully reviewed the motion, and the only matter presented in it which has not been heretofore sufficiently discussed is the contention that the court erred in submitting special issue No. 2 as follows:

"Did Locke, on behalf of the defendant Osage Oil Company, employ the plaintiff, Earl J. Caulk, to move his star rig on block 88 on said defendant's lease, to drill in and swab the well on the said oil and gas lease?"

—without, as required by article 1984a, submitting a special charge defining the term "agent." The word "agent" does not appear in the issue. Besides, if the issue submitted by the court nowhere used that term and the appellant wanted the term defined, it was its duty to submit a special charge giving such definition. Failing in this, the appellant cannot complain here. K. C., M. & O. Ry. Co. v. Oates (Tex. Civ. App.) 185 S. W. 1014.

The appellant's motion is overruled, and the judgment, less the amount remitted, is affirmed.