WEIMER et al. v. PRINCE & PRINCE.*
(No. 10046.)

(Court of Civil Appeals of Texas. Fort
Worth. Nov. 4, 1922. Rehearing Denied
Dec. 9, 1922.)

1. Principal and agent ⊚➾189(1)—Petition alleging contract made by defendant's general manager held sufficient to charge agency, especially where no special exception questioned sufficiency.

A petition alleging that the contract sued on was made by defendant's general manager held sufficient to charge agency, especially where no special exception was urged questioning its sufficiency.

2. Principal and agent ⊚➾123(1)—Evidence held to show person contracting for drilling of oil well had authority from owner of lease.

Evidence held to show that one contracting for the drilling of an oil well had authority from the owner of the lease to do so.

3. Appeal and error ⊚➾1066—Instruction presenting unpleaded issues of ratification, apparent authority, and estoppel harmless where agency was conclusively established.

In an action for the contract prices for drilling and cleaning an oil well, where the evidence conclusively established that the parties with whom the contracts were made were agents of the owner of the lease, an instruction presenting the issues of ratification, apparent authority, and estoppel was harmless, if erroneous as permitting the jury to find an agency to bind defendant on any one or more of such theories, none of which were presented by plaintiff's pleadings.

4. Judgment ⊚➾240—Joint judgment against assignor and assignee of oil lease for amount due for drilling oil well under contract assumed by latter held not erroneous.

A joint judgment against the seller and purchaser of an oil lease for the amount due for the drilling of an oil well under the terms of the former's written contract, which the latter assumed by an oral contract with plaintiffs, supported by a valuable consideration, and hence not alleged to be in contravention of the statute of frauds, held not erroneous, especially where no plea of misjoinder of causes of action or parties was presented.

5. Novation ⊚➾5—Judgment against assignor held not erroneous because work was done under new contract with assignee.

A judgment against the assignor of an oil lease for the amount due under the terms of a contract with it for drilling a well held not erroneous because plaintiffs entered into and drilled the well under an independent contract with assignee, where there was no plea of novation, which would have been inconsistent with assignor's plea and evidence that it had nothing further to do with the drilling of the well, and did not participate in the making of the contract with assignee, nor any plea of waiver of the right, or estoppel to rely on the original contract.

On Rehearing.

6. Evidence ⊚➾8—Judicial notice that oil in ground is likely to pass to well on adjoining lease.

The courts take judicial notice that oil in the ground is in its nature fugitive, and likely to pass from one lease to a well on an adjoining lease.

7. Evidence ⊚➾471(31)—Testimony of principal and agent that latter had no authority to enter into contract sued on held mere conclusions.

Testimony of the owner of an oil lease and his general manager that the latter had no authority from the former to enter into a contract for the drilling of an oil well held mere conclusions.

8. Principal and agent ⊚➾173(3)—Rule that agency cannot be established by agent's declarations inapplicable where agency is admitted and authority shown by proof of acts done with principal's knowledge and acquiescence.

The rule that agency cannot be established merely by the declarations of the supposed agent is inapplicable where the the agency is admitted and the agent's authority is sought to be established by proof of his acts in the general management and conduct of a business, with the knowledge and acquiescence of his principal.

9. Mines and minerals ⊚➾109—Well drillers may recover contract price in absence of pleading and proof of repudiation of contract by defendant and notification thereof.

In the absence of pleading or proof, in an action for the contract price of drilling an oil well, that defendant repudiated the contract and notified plaintiffs thereof before they drilled the well, they may recover the contract price, not merely the profits they would have lost if they had not drilled the well.

10. Mines and minerals ⊚➾109—Well drillers not precluded from recovering contract price because they would not have drilled well but for promise of purchaser of defendant's lease.

That persons suing for the contract price of drilling an oil well would not have drilled the well but for the promise of one to whom defendant's lease was sold did not preclude them from holding defendant liable according to its contract.

Appeal from District Court, Wichita County; E. W. Napier, Judge.

Action by Prince & Prince against W. G. Weimer and others. Judgment for plaintiffs and defendants appeal. Modified and affirmed.

Fitzgerald & Hatchitt, of Wichita Falls, and Head, Dillard, Smith, Maxey & Head, of Sherman, for appellants.
Bullington, Boone, Humphrey & Hoffman, of Wichita Falls, for appellees.

DUNKLIN, J. W. G. Weimer and the Texas Ranger Producing & Refining Com-

---

⊚➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction January 24, 1923.

pany, hereinafter referred to as the company, and A. B. Stone, its receiver, have appealed from a judgment rendered against them in favor of the plaintiffs L. J. Prince, R. P. Prince, and E. B. Prince for work done by them in drilling an oil well and in cleaning out the same after it was finished; the amount recovered for drilling the well being $11,093.31, and recovery for the same being against appellant Weimer and the defendant company and A. B. Stone, its receiver, jointly and severally, and $3,786.60 additional, being the amount recovered against Weimer alone for cleaning out the well after it had been finished.

The record shows that plaintiffs entered into a written contract with the defendant company to drill ten wells upon a lease owned by the company, situated in Wichita county. By the terms of that contract the company agreed to furnish all derricks, fuel, water, slush pits, casing, cement, and finishing equipment, fuel oil, and water tanks; said fuel, water, and casing to be furnished when called for by parties of the second part, and to pay plaintiffs the sum of $100 per day for delay in failing to so furnish the same. The company further contracted to pay plaintiffs the sum of $5.50 per foot for the entire depth each well was drilled. Plaintiffs contracted and agreed to drill the wells to a depth of approximately 1,800 feet, and to furnish all necessary machinery and labor, and to set and cement the casing when requested so to do.

Plaintiffs drilled and completed 9 wells, for which they were paid by the defendant company the price stipulated in the contract. While they were engaged in finishing the ninth well the company sold the lease to the defendant W. G. Weimer. After said sale plaintiffs drilled the tenth well, and for the drilling of the same J. P. Morrison, the general manager of defendant Weimer, furnished all the material, such as casing, fuel, water, oil, etc., which defendant company had by their written contract bound themselves to furnish to plaintiffs for that purpose. After the well was finished according to the terms of the written contract with the defendant company, plaintiffs moved their machinery away from the well. Thereafter the well became obstructed by what is termed "junk," and plaintiffs at the instance and request of W. C. Dickey, as the agent and representative of Weimer, moved their machinery back to the well and cleaned it out, Dickey, as such representative and agent, having promised and agreed with plaintiffs that Weimer would pay them for such work.

In their pleadings plaintiffs alleged the execution of the written contract by the defendant company; they also alleged, in substance, that after the sale of the lease to Weimer, Morrison, as his general manager, contracted and agreed with them that, if they would drill the tenth well, Weimer would pay them therefor the compensation which the defendant company had agreed to pay them, under and by virtue of its written contract. In other words, it was alleged, in substance, that Morrison, as the general manager, agreed that Weimer would perform all the obligations of the defendant company stipulated in said written contract, and that, relying upon said promise, plaintiffs did drill the tenth well, which they would not have done but for such promise, by reason of a fear that the defendant company, who had sold out the lease, might not pay the same, and the further fact that plaintiffs had an opportunity to get other drilling contracts more profitable to them.

Plaintiffs further alleged that, after they had finished the well and moved the machinery therefrom, the well became junked through no fault or negligence on their part, and at the special instance and request of W. C. Dickey, who was an agent and employé of Weimer, plaintiffs moved their machinery back to the well, and cleaned out the same; that said Dickey had full authority from Weimer to employ them to do said work, and thereby Weimer promised and became liable to pay plaintiffs for the reasonable value of said work. Upon the facts so alleged, plaintiffs prayed for judgment against the defendant company and its receiver and the defendant Weimer for the contract price for drilling the said well, and for judgment against Weimer alone for the value of the work in cleaning out the same.

The defendant company and its receiver, in addition to a general denial, pleaded further that, after the sale of the lease to Weimer, said company had nothing further to do with the drilling of the well in controversy, and that the same was drilled under an independent contract between plaintiffs and defendant Weimer, to whom the company had sold all its interest in the lease. It was further alleged in said answer that, if said company should be held liable to plaintiffs, then, by reason of certain facts alleged which it is unnecessary to enumerate, Weimer is liable to the company and its receiver, and a cross-action was urged against Weimer therefor. The company and its receiver also filed a cross-action against plaintiffs, but the nature of the same is unimportant, as the same is not involved in any of the questions presented here.

O. J. Benson, G. H. Colvin, J. D. Wade, Cecil H. Smith, Jr., and C. J. Alworth were likewise made defendants, but judgment was rendered in their favor, and, since no question is made of the correctness of the judgment as to them, it will be unnecessary to set out the reasons for which they were made parties to the suit. The trial was before a jury upon special issues, and the following

are those issues and the findings of the jury thereon:

"Special Issue No. 1: Did J. P. Morrison have authority from W. G. Weimer, as his agent, on the lease, to contract for the drilling of a well, and to bind W. G. Weimer for payment of same? Ans. Yes.

"Special Issue No. 2: If you answer issue No. 1 in the affirmative, than answer this issue; but if you answer issue No. 1 in the negative, then do not answer this issue: Did or not Prince & Prince, before drilling the well in controversy, have a contract with J. P. Morrison as agent of W. G. Weimer to drill the well and agree with Morrison that Weimer would pay for same? Ans. Yes.

"Special Issue No. 3: Did W. C. Dickey have authority from W. G. Weimer, as his agent, to authorize the junk cleaned out of the well and bind W. G. Weimer for payment of same? Ans. Yes.

"Special Issue No. 4: If you answer issue No. 3 in the affirmative, then answer this issue; if not, do not answer this issue: Did (or not) Prince & Prince have an agreement with W. C. Dickey as agent of W. G. Weimer to clean junk out of the well, and that, if the junk was not in the well on account of fault or negligence of Prince & Prince, that Weimer would pay said Prince & Prince for the job? Ans. Yes.

"Special Issue No. 5: If you have answered the preceding issue, then answer this one: Was or not the junked hole caused by the fault or negligence of Prince & Prince? Ans. No.

"Special Issue No. 6: Was or not the junked hole caused by the fault or negligence of W. G. Weimer or his agents? Ans. Yes.

"Special Issue No. 7: How many days, if any, were plaintiffs delayed in the drilling of said well by reason of the failure of the Texas Ranger Producing & Refining Company or of W. G. Weimer to deliver casing at the well? Ans. Eight days.

"Special Issue No. 8: Did (or not) W. G. Weimer acquire the lease in controversy with the agreement that Texas Ranger Producing & Refining Company would complete and fulfill the Prince & Prince contract? Ans. No."

In connection with the submission of those issues, the court gave to the jury the following special charge, which was requested by counsel for plaintiffs:

"On the question of agency, you are instructed that the employés of W. G. Weimer on the lease in question would have all of the powers expressly granted to them, or either of them, by the said W. G. Weimer, and would also have whatever authority that would arise by implication which was necessary or proper as a means of effectuating the powers expressly granted to him, or them, but, in order to authorize the inference of authority of the agent upon implied authority, it must appear that the thing done, or of the transaction made, was necessary in order to carry out the powers expressly delegated to him, or them. The principal's liability is not only limited to such actions of the agent as are thus expressly authorized or necessarily implied from express authority, but also all other acts of the agent as are within the apparent scope of the authority conferred upon him, or them, are also binding upon the principal, and by apparent authority is meant that which is not actually granted but which the principal not only permits the agent to exercise, or which he holds him out as possessing. The principal is also bound by the acts of his agent when, knowing the course of conduct of the agent, he adopts or ratifies such acts of the agent and accepts the benefits derived therefrom."

Upon the verdict so returned, the judgment recited above was rendered, and no contention is made here that the respective amounts for which the judgment was rendered are incorrect.

[1] Different assignments are presented by appellant Weimer relative to the issue of agency on the part of J. P. Morrison to bind him to pay for the drilling of the well. It was alleged in plaintiffs' petition that Morrison made that contract as the general manager of Weimer, but it was not alleged that in so doing he was Weimer's agent. In the first place, it is insisted that under that allegation there was no legal basis for holding defendant bound by the contract. In other words, it is contended that the allegation that Morrison was the general manager of Weimer's lease was not equivalent to an allegation that he was his agent, clothed with authority to bind him by the contract alleged.

In Booker-Jones Oil Co. v. National Refining Co., 63 Tex. Civ. App. 142, 132 S. W. 815, the following definitions were quoted with approval:

"The term 'general manager' is synonymous with general agent. A general agent is virtually the corporation itself." Ry. Co. v. Reisner, 18 Kan. 460.

"A general agent is one who is employed to transact every business of a particular kind." Gibson v. Hardware Co., 94 Ala. 352, 10 South. 307.

"A general agent is usually authorized to do all acts connected with the business in which he is engaged." Godshaw v. Struck & Bro., 109 Ky. 285, 58 S. W. 781, 51 L. R. A. 668.

"A general manager of a business corporation is a person having * * * charge of those business matters for the carrying on of which the corporation was incorporated." Washington Gaslight Co. v. Lansden, 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 549.

Many other authorities to the same effect are cited in the Booker-Jones Oil Co. Case, in which case it was held, in effect, that proof that one Bryson, the general manager of the oil company, was proof of agency to bind the company. That decision has been cited with approval in the following cases: Cuero Packing Co. v. Alamo Mfg. Co. (Tex. Civ. App.) 194 S. W. 493; Banner Oil & Gas Co. v. Gordon (Tex. Civ. App.) 235 S. W. 945; Osage Oil & Gas Co. v. Caulk (Tex. Civ. App.) 243 S. W. 551. See, also, Collins v. Cooper, 65

Tex. 461; American Metal Co. v. San Roberto Mining Co. (Tex. Civ. App.) 202 S. W. 360.

[2] We are of the opinion that the pleading referred to was sufficient to charge agency, especially in view of the fact that no special exception was urged presenting the question of its sufficiency. It is also insisted that the evidence shows conclusively that Morrison did not have authority from Weimer to make the contract. Both Morrison and Weimer testified substantially to that effect. But it was proven beyond controversy that Morrison was the general manager of Weimer, in charge of the property; that Weimer, living in Kansas City, was never on the lease but once, and intrusted the entire management of it to Morrison. It was also proven that the well in controversy was an offset well to another well on an adjoining lease, and that it was necessary to drill the same in order to properly protect Weimer's interest, in view of the fact that oil in the ground is fugitive in its nature, and likely to pass from one lease to a well on an adjoining lease unless prevented from so doing by another well. Furthermore Morrison himself admitted that he furnished to plaintiffs all the material, such as casing, fuel, water, etc., which the company had agreed to furnish under its written contract, in order to enable the plaintiffs to finish the well; and neither he nor Weimer claimed in their testimony that he had no authority from Weimer so to do, nor that he did so with any expectation of being reimbursed therefor by the defendant company. All of those facts were proven beyond controversy, as was also the fact that Dickey, as Weimer's manager in charge, in the absence of Morrison, employed the plaintiffs to clean out the well and agreed to pay them for such work.

[3] Another complaint is made of the special instruction given by the court upon plaintiff's request, copied above. It is insisted that by that instruction the issues of ratification, apparent authority, and estoppel were all presented, and the jury permitted to find agency on the part of Morrison and Dickey to bind Weimer upon any one or more of those theories, in the absence of any pleading of plaintiffs presenting those issues.

We are of the opinion that the agency of Morrison and Dickey was conclusively established by the evidence, and that therefore, if the instruction was erroneous in those respects, such error was harmless.

[4] Appellant Weimer insists that the rendition of a joint judgment against him and the other appellant was fundamental error. That contention is without merit. The contract executed by the company unquestionably showed liability for drilling of the well. and, under the findings of the jury, appellant Weimer was also liable for the same demand. Weimer's liability grew out of an oral contract with plaintiffs in the case to assume the company's written contract, and no pleading was presented that that oral contract was in contravention of the statute of frauds, apparently for the reason that such a plea would have availed nothing in view of the fact that the parol contract was supported by a valuable consideration passing to Weimer. Since both he and the company were liable for the same demand, we perceive no valid reason why judgment could not be recovered against both in the same suit, especially in view of the further fact that no plea of misjoinder of causes of action or parties was presented, if indeed such a plea could have been successfully urged, which is doubtful, to say the least.

[5] The appellant company and its receiver also insist that the judgment against them was erroneous by reason of the fact that the well was drilled under an independent contract between Weimer and the plaintiffs. No plea was filed by them presenting the defense of novation of contract, and such a plea would have been inconsistent with the further plea by them, and evidence introduced in support thereof, that the company had nothing further to do with the drilling of the well or anything pertaining thereto, and did not in any way participate in the making of the contract between the plaintiffs and Weimer, upon which plaintiffs sued. In order to create a novation of contract, it would have been necessary for the defendant company to become a party to the novation agreement, and for plaintiffs to agree to discharge the company from liability on its contract, and to look alone to Weimer for its performance. Gimbel & Sons v. King, 43 Tex. Civ. App. 188, 95 S. W. 7.

Furthermore, no pleading was filed presenting the contention that by entering into the contract with Weimer to pay for the drilling of the well plaintiffs waived their right to rely upon the contract with the company theretofore made to pay for such work; nor was there any plea of estoppel growing out of such action on the part of plaintiffs.

The judgment in favor of the defendants Benson, Colvin, Wade, Smith, and Alworth, of which no complaint is made, is left undisturbed, but in all other respects the judgment is affirmed, with the modification that plaintiffs will be entitled to but one satisfaction of their judgment against the two appellants jointly.

### On Rehearing.

Counsel for appellant Weimer strenuously insists that there was a total absence of proof of practically all the circumstances related in our opinion on original hearing as a basis for the conclusion reached that Morrison, as Weimer's agent, had authority to make the contract with plaintiffs upon which their suit was based. We have carefully examined the record, and find that both Morrison and

Judge Cecil Smith, representing the Texas Ranger Producing & Refining Company, testified that the casing which Morrison purchased and furnished to plaintiffs for the well in controversy, amounting to the sum of $3,921.75, was later charged to that company. Hence we were in error in stating in our original opinion, in effect, that the casing was furnished to plaintiffs with no expectation on the part of Morrison or Weimer of reimbursement therefor from the Texas Ranger Producing & Refining Company, and our said former statement to the contrary is now withdrawn.

But the testimony of Morrison himself, aside from that of other witnesses, further shows that said casing was in fact furnished to plaintiffs by Morrison, and that he did so after first advising with Weimer and getting his consent thereto.

[6] It is true, as stated by counsel for appellant Weimer, that no witness testified that "oil in the ground is in its nature fugitive and likely to pass from one lease to a well on an adjoining lease," as recited in the opinion; but the courts take judicial notice of that fact, as is well settled by the authorities. Texas Co. v. Daugherty, 107 Tex. 226, 176 S. W. 717, L. R. A. 1917F, 989.

[7] The testimony of Weimer and Morrison that the latter had no authority from the former to enter into the contract upon which the suit was based was mere conclusions of those witnesses, which were conclusively refuted by the other circumstances appearing in the statement of facts and recited in our opinion showing such agency.

[8] The rule that agency cannot be established merely by testimony showing the declarations of the supposed agent has no application here, because the agency of Morrison was admitted, and his authority as such agent, which was the pivotal issue, was not sought to be established by proof of his declarations, but of his acts in the general management and conduct of the business, all with the knowledge and acquiescence of Weimer. Through inadvertence it was stated in said opinion that the Texas Ranger Producing & Refining Company by plea over sought a recovery against Weimer for any recovery against it by plaintiff. To the contrary, Weimer, by cross-action, sought a recovery over against his codefendants for any amount that plaintiff might recover against him,

upon allegations that, in the sale of the lease to him, they represented and warranted that there were then on said lease 11 fully completed wells, for which all costs of drilling work thereon had been paid; that he (Weimer) relied upon said representations, and was induced thereby to purchase the lease; and, further, that it was then and there agreed that said property should be delivered to him free and clear of all debts, liens, and claims against the same.

[9] There was neither pleading nor proof by appellant, the Texas Ranger Producing & Refining Company, or its receiver, that that company repudiated its drilling contract with plaintiffs, Prince & Prince, and notified them of such repudiation, before they drilled the well in controversy. Hence there is no merit in the contention now urged by those appellants for the first time that the measure of plaintiffs' damage as against them would not be the contract price for drilling the well, but would be the profits which they would have lost if they had not drilled it, as shown by the very authorities cited by appellants, some of which are: Greenwall Theatrical Circuit Co. v. Markowitz, 97 Tex. 479, 79 S. W. 1069, 65 L. R. A. 302; Ollesheimer v. Foley, 42 Tex. Civ. App. 252, 95 S. W. 688; Richards v. Manitowoc, etc., Co., 140 Wis. 85, 121 N. W. 937, 133 Am. St. Rep. 1063; 13 Corpus Juris, § 731, p. 655, and other decisions there cited. If appellant company had repudiated their drilling contract, and so notified plaintiffs before they drilled the well, then those authorities would have sustained their contention now urged.

[10] The fact that, according to the testimony of plaintiffs, they would not have drilled the well but for the promise of Weimer to pay for it, for the reason that they were uncertain of being able to collect from the ranger company, did not preclude them from holding that company liable according to its contract. From a holding otherwise, it would follow that the principal on a promissory note would escape liability thereon to the payee, if it could be shown that the latter would not have made the loan in the absence of the signature of a surety who executed it also.

With the foregoing corrections of recitals in our original opinion, the motions of all appellants are overruled.